UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEREMY MacFARLANE, MARTIN
HERMIZ, PETER GIRGIS, MOMTAZ
TAWFIK, and HANSEE SESI,

    Defendants.
_____/

CASE NO. 03-81083
JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION: The Court should deny defendant MacFarlane's motion to quash the search warrant and suppress evidence (docket #48). The Court should also deny defendant Sesi's motion to join in defendant MacFarlane's motion to quash (docket #50).

II.    REPORT:

A.    *Procedural Background*

This criminal prosecution arises from the grand jury's two-count indictment returned on December 4, 2003. The indictment charges in Count I that each defendant, from on or before February 5, 2002, until the date of the indictment, conspired to possess with the intent to distribute more than 50 but less than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846. Count II charges that each defendant, except for defendant Sesi, possessed with the intent to distribute more than 50 but less than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a).

The matter is currently before the Court on defendant MacFarlane's motion to quash the search warrant and suppress the evidence seized pursuant to the warrant, filed on November 15, 2006, as well as defendant Sesi's related motion to join in defendant MacFarlane's motion, filed on November 20, 2006. Defendants argue that the warrant fails to establish probable cause to believe that contraband or evidence of criminal activity would be found at the location of the search at the time the warrant was executed.[1] The government filed a response to the motions on December 6, 2006. For the reasons that follow, the Court should deny defendants' motions.

B.    *Legal Standard*

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. CONST. amend. IV. The Fourth Amendment requires that every warrant for a search be based upon probable cause, and that probable cause be determined by a neutral and detached magistrate. *See Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972).

As the Supreme Court has explained, "probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1981). In determining whether probable cause for a search exists, a court applies a "totality of the circumstances" test. *See id.* at

---

[1]Defendant Sesi also argues in his motion that statements in the search warrant affidavit regarding federal agents stopping him from boarding a flight to Arizona at Detroit Metropolitan Airport while carrying a large amount of cash should be suppressed under Federal Rules of Evidence 401-403. This argument is the subject of a separate motion in limine filed by defendant Sesi on December 8, 2006, and thus is not addressed in this Report.

230. The inquiry under this test is necessarily fact-driven, and the court must evaluate the officers' actions in accordance with the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). A finding of "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243-44 n.13. The "totality of the circumstances" test requires a court to consider all factors together, even if they would be innocent when viewed in isolation. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002).[2]

"[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 263 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Because "'[a] grudging or negative attitude by reviewing courts toward warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant," *id*. (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)), a magistrate's determination of probable cause will withstand a Fourth Amendment challenge "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Id*. (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)) (alteration in original).

C.   *Analysis*

The search at issue in this case occurred at 11209 Glenis Street, in Sterling Heights, Michigan, on February 5, 2002. The search warrant affidavit was prepared by Sterling Heights

---

[2]*Arvizu* involved an application of the totality of the circumstances test to the reasonable suspicion needed to justify an investigatory stop. Although "reasonable suspicion" is a lesser quantum of evidence than probable cause, the manner in which the totality of the circumstances test is applied is the same, and thus *Arvizu* provides guidance on applying that test in the probable cause context. *See United States v. Yusuf*, 461 F.3d 374, 390 n.15 (3d Cir. 2006).

Police Detective James Belmonte, and the warrant was issued by Judge Stephen S. Sierawski of the 41-A District Court. The affidavit was sworn on February 4, 2002. *See* Br. in Supp. of Def. MacFarlane's Mot. to Quash, Ex. 1 [hereinafter "Affidavit"]. The Affidavit describes the location to be searched, and describes the property to be searched for and, if found, seized, as "[c]ontrolled substances . . . specifically but not limited to marijuana," as well as any evidence of drug trafficking. As factual support for the existence of probable cause, Detective Belmonte averred that:

- On December 17, 2001, Sterling Heights Police Officer Tsouroullis seized trash bags located in front of the 11209 Glenis Street residence which "included miscellaneous packaging material indicative to illegal narcotics trafficking, and miscellaneous paperwork bearing the name of Jeremy Steven McFarlane [sic]."

- Defendant MacFarlane's residency was confirmed via a LEIN check, and a silver Cadillac belonging to defendant Sesi was observed in the driveway of the residence.

- Within the 30 days prior to the affidavit, defendant Sesi was stopped by federal law enforcement agents at Detroit Metropolitan Airport while attempting to board a flight to Arizona, a direct route for the transportation of marijuana to the Detroit area. At the time, defendant Sesi was in possession of a large quantity of cash, which was strapped to the inside of his legs.

- On January 15, 2002, Officer Tsouroullis seized trash left in front of the home, which included "a small amount of marijuana residue, stems, and seeds."

- On February 4, 2002, the date of the affidavit, Detective Belmonte seized trash from the curb in front of the residence. The trash included "marijuana residue, stems and seeds (positive field test for marijuana content).

- Further surveillance of defendant Sesi on that date yielded observations that defendant Sesi "was engaged in apparent narcotic trafficking in parking lots within the City of Sterling Heights."

- Surveillance of the residence "revealed numerous short-term vehicle traffic at all hours of the night."

- Surveillance and investigation also revealed that defendant "Sesi has routinely, with the access of a house key, entered and existed the residence at 11209 Glenis while the homeowner was away," and sometimes stayed the night. Defendant Sesi was also observed at his own home in Sterling Heights. According to Detective

>Belmonte, "[i]t is not uncommon for narcotics traffickers to routinely utilize several different residences to avoid detection[.]"

Based on the above information, the issuing judge did not err in determining that probable cause existed to believe that drugs or evidence of drug trafficking activity would be discovered at the residence. The affidavit described the occupants of the home as engaging in activities consistent with drug trafficking, and described marijuana residue which had been discovered in the trash from the home on three separate occasions, the latest on the date the affidavit was sworn. The affidavit also established that defendant MacFarlane resided in the home, and that defendant Sesi was a frequent visitor to the home, sometimes spending the night.

Defendants contend that "the mere fact that residue, stems, and seeds, are present on a given day does not provide probable cause that bulk marijuana will be there on a different day," and that "the fact that Mr. Sesi was stopped thirty days earlier in possession of a large amount of money does not lend any support to the notion that: (a) that he obtained that money illegally through the sale of marijuana; and, more importantly, (b) that the marijuana that he allegedly sells is stored at 11209 Glenis." Def. MacFarlane's Br., at 6. Defendant's argument, however, engages in the "sort of divide-and-conquer analysis" which is inappropriate under the totality of the circumstances test. *Arvizu*, 534 U.S. at 274. The facts described in the affidavit may not be parsed in this fashion, and must be considered as a whole. On the whole, the affidavit describes activities indicative of drug trafficking both at the home and by defendant Sesi away from the home. Even if the actions of the defendants viewed in isolation appear innocent, taken together they suggest that the defendants were engaged in narcotics trafficking. The affidavit also describes marijuana residue being discovered on three separate occasions, the latest on the day the affidavit was sworn (and the day prior to the search). The affidavit also describes defendant MacFarlane's residency in the home, and defendant

Sesi's sometime occupancy. As the Sixth Circuit has explained, "in the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998); *see also*, *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); *United States v. Caicedo*, 85 F.3d 1184, 1192-93 (6th Cir. 1996).

Nor is there merit to defendants' argument "that absent a controlled buy or information from an informant claiming that marijuana was being stored and/or sold at the Glenis address, the results of the trash searches were insufficient to support a finding of probable cause that marijuana would be found there at the time the warrant was issued." Def. MacFarlane's Br., at 6. Again, this argument improperly isolates the trash searches from the other evidence supporting probable cause. Even assuming, however, that the only evidence supporting the warrant was the trash search evidence, this evidence alone would be sufficient to establish probable cause. There is no issue of staleness, because it is well established that a search warrant is "not stale if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (internal quotation omitted). Thus, "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001); *see also*, *United States v. Newton*, 389 F.3d 631, 635-36 (6th Cir. 2004) ("[W]ith continuing criminal operations, any issues of staleness, or the lack of a direct known link between the criminal activity and residence, becomes minimal."), *vacated on other grounds*, 126 U.S. 280 (2005). Here, the affidavit described an ongoing pattern of conduct involving defendants, and described marijuana residue being found in the trash on three separate occasions. Even taken alone, the repeated discovery of marijuana residue, seeds, and stems in the trash pulled from in front of the home suffices to establish probable cause. *See United States*

*v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003); *cf. United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002) (district court did not err in refusing to reopen suppression hearing to obtain testimony from confidential informant cited in search warrant affidavit because, even if the informant's statements were excised, cocaine residue found in defendant's trash alone was sufficient for a finding of probable cause).

In short, the affidavit describes repeated discovery of marijuana residue in the trash in front of the home searched, as well as activities by the resident and by a frequent visitor indicative of drug trafficking.  Under the totality of the circumstances test, this information was sufficient for the issuing judge to determine that probable cause existed to believe that drugs or evidence of drug trafficking would be found at the residence.  Accordingly, the court should deny defendants' motions to suppress.

D.     *Conclusion*

In view of the foregoing, the Court should deny defendant MacFarlane's motion to quash the search warrant and suppress the evidence, and should deny defendant Sesi's motion to join in defendant MacFarlane's motion to quash.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not

preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/19/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 19, 2006.
>
> s/Eddrey Butts
> Case Manager